Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
   *Special Assistant Attorney General*
Kelly H. Dove, OSB No. 082165
kdove@swlaw.com
Alexix G. Terríquez (admitted *pro hac vice*)
aterriquez@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
Telephone:  503.624.6800
Facsimile:  503.624.6888

   Attorneys for State Defendants

   Additional Counsel of Record Listed on
   Signature Page

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| COCINA CULTURA LLC, an Oregon limited liability company,<br><br>   Plaintiff,<br><br>vs.<br><br>STATE OF OREGON; OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; KATY COBA, in her Official Capacity as State Chief Operating Officer and Director of the Oregon Department of Administrative Services; THE CONTINGENT, an Oregon nonprofit corporation; THE BLACK UNITED FUND OF OREGON, INC., an Oregon nonprofit corporation,<br><br>   Defendants. | Case No. 3:20-cv-01866-IM (Lead)<br>Case No. 3:20-cv-02022-IM (Trailing)<br><br>**STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**LR 7-1 CERTIFICATION**

State Defendants and Plaintiff conferred in good faith about each claim and defense but were unable to resolve this motion.

**MOTION**

State Defendants hereby move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Specifically, State Defendants seek a judgment in their favor on the requests for declaratory and injunctive relief, on the grounds that those requests are moot because Plaintiff is unable to demonstrate a basis for prospective relief. The Fund has closed and expired; the COVID-19 pandemic has abated; and there is no basis for this Court to conclude that the State will create another COVID relief fund with race-conscious criteria that would exclude Plaintiff. Moreover, the federal government has taken steps to address racial disparities in access to COVID-19 relief moneys, which was the problem the Fund was created on an emergency basis to address.

Further, even if the prayed-for equitable relief is not moot, the Court should exercise its considerable discretion and decline to grant it. Pursuant to a settlement agreement in the consolidated companion case, Defendants agreed that Fund applicants who did not self-identify as Black-owned businesses would have their applications processed and paid—the same equitable relief Plaintiff seeks in this action. Plaintiff rejected that remedy by opting out of that settlement (it was the only business to do so).

This motion is based on the accompanying Memorandum, the Declarations of Clifford S. Davidson and Ben Sand,[1] matters subject to judicial notice, the Court's file and any further evidence or argument that may be presented on reply or at a hearing on this motion.

---

[1] State Defendants are refiling with this motion Mr. Sand's previously filed declarations, ECF 25 ("Dec. 2 Sand Decl.") and ECF 50 ("Dec. 16 Sand Decl.").

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................ 2

    A. Oregon receives CARES Act funds from the federal government; the State Emergency Board allocates funds within the state and creates the Oregon Cares Fund for Black Relief and Resiliency ........................................................... 2

    B. DAS grants funds to defendant The Contingent, which administered the Fund ....................................................................................................................... 3

    C. Plaintiff applies to the Fund and its application is permanently denied ................ 3

    D. Plaintiff applies to, and receives money from, another race-conscious relief fund funded with federal CRF moneys .......................................................... 4

    E. Plaintiff files this action and moves for a preliminary injunction, which the Court denies ........................................................................................................... 4

    F. The Fund closes to additional applications ............................................................ 6

    G. State Defendants, The Contingent and Great Northern Resources, Inc. reach a class-action settlement approved by the Court; Plaintiff was a member of the certified settlement class but opted out ........................................... 6

III. ARGUMENT ..................................................................................................................... 7

    A. Summary judgment standard .................................................................................. 7

    B. Declaratory and injunctive relief are moot and therefore should not be granted..................................................................................................................... 8

        1. Legal standard for mootness of requests for equitable relief ..................... 8

            a. Standard for mootness of declaratory relief ................................. 8

            b. Standard for mootness of injunctive relief ................................... 9

        2. The Fund's closure and expiration render Plaintiff's requests for equitable relief moot .................................................................................. 10

    C. Plaintiff cannot obtain injunctive relief as to the Fund because, as this Court already determined, Plaintiff cannot establish irreparable harm ................ 12

    D. Even if declaratory relief is not moot, the Court should exercise its "unique and substantial discretion" to withhold it ............................................... 13

    E. Plaintiff may not pursue an injunction to obtain relief that was offered to Plaintiff but which Plaintiff rejected by opting out of the GNR Settlement ........ 14

IV. CONCLUSION ................................................................................................................ 15

**MEMORANDUM**

**I.**

**INTRODUCTION**

At the April 6, 2021 hearing on State Defendants' motion to stay discovery, the Court asked plaintiff Cocina Cultura, LLC to explain why this action now is anything more than a damages case, especially given that the amount Plaintiff would be entitled to receive from the Oregon Cares Fund for Black Relief and Resilience ("Fund") remains on deposit in the Court registry. (*See* Davidson Ex. 1, Tr. at 9:6-12.) Plaintiff responded that it is entitled to a declaration that the Fund *was* unconstitutional (Davidson Ex. 1, Tr. at 10:10-13), because such a declaration would make Plaintiff's owner feel vindicated after having faced some public criticism for filing the lawsuit (Davidson Ex. 1, Tr. at 10:23-11:15).

This Court lacks jurisdiction to issue the advisory opinion Plaintiff seeks concerning a now-defunct government program. The Fund has closed and is no longer in operation and, as part of a settlement in a consolidated companion case, the State has agreed (with the Court's approval) to pay all Fund applicants on a race-neutral basis. Even before then, on December 7, 2020, the Defendants in this case deposited $46,853.65 in the Court registry—the amount Plaintiff would have received through the Fund, plus an amount to account for one year of interest at the Oregon rate of nine percent, which is greater interest than Plaintiff can collect here. As a result, there can be no declaratory relief because there is no "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (2020), or Article III of the Federal Constitution, and no injunctive relief because there is neither ongoing conduct to enjoin nor irreparable harm. Declaratory and injunctive relief are moot.

Furthermore, Plaintiff is not entitled to invoke the equitable powers of this Court after opting out of a class-action settlement, involving the same defendants Plaintiff sued in this action, that would have provided Plaintiff with the same relief that Plaintiff prays the Court compel in equity through this action. For these reasons, the Court should grant the motion for partial summary judgment and dismiss the requests for equitable relief.

II.

## FACTUAL BACKGROUND

A. **Oregon receives CARES Act funds from the federal government; the State Emergency Board allocates funds within the state and creates the Oregon Cares Fund for Black Relief and Resiliency.**

On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act. In April 2020, Oregon received approximately $1.39 billion through the Coronavirus Relief Fund ("CRF") created by Section 5001 of the CARES Act. (Davidson Decl., ¶ 3 & Ex. 2) Pursuant to Article III, section 3 of the Oregon Constitution and ORS 291.326, the State Emergency Board was tasked with allocating a portion of these CRF funds.

On July 14, 2020, only 4.5 months after Oregon identified its first case of COVID-19,[2] the State Emergency Board allocated over $200 million of the CRF funds received by the State to assist vulnerable Oregonians and their businesses. This allocation included:

- $25.6 million in emergency assistance to small businesses with under 25 employees and which did not receive money under the Paycheck Protection Program or other provisions of the federal CARES Act;

- $50 million to support music, culture and community venues closed due to the pandemic;

- $30 million to the COVID-19 Leave Fund for workers not qualifying for traditional sick leave;

- $35 million to fund $500 Emergency Relief Checks for those waiting for unemployment benefits; and

- $62 million to the Oregon Cares Fund for Black Relief and Resiliency (the "Fund") "to provide economic relief to Black individuals and businesses. National and state

---

[2] https://www.oregon.gov/oha/ERD/Pages/Oregon-First-Presumptive-Case-Novel-Coronavirus.aspx (accessed June 18, 2021).

data show that the Black community is one of the communities experiencing a disproportionate share of negative economic and health effects due to COVID-19." (Davidson Decl. ¶ 4 & Ex. 3.) The State Emergency Board created the Fund after receiving evidence that, even though COVID-19 was causing disproportionate harm in Black communities and wiping out many of the gains that Black Oregonians and their businesses made after the Great Recession, ostensibly race-neutral government aid, including the federal Paycheck Protection Program ("PPP"), was not reaching Black Oregonians in proportion to their suffering. (*See*, *e.g.*, Declaration of Oregon Emergency Board Members, ECF 53, ¶ 9.)

**B.  DAS grants funds to defendant The Contingent, which administered the Fund.**

This lawsuit concerns the Emergency Board's $62 million allocation to the Oregon Department of Administrative Services ("DAS") for a grant of the Fund moneys to defendant The Contingent. Pursuant to the Emergency Board's allocation, The Contingent used the granted CRF funds to establish and administer the Fund. (Davidson Decl. ¶ 5 & Ex. 4 at 2 § 3.)

The Contingent established a distribution process to grant relief through the Fund to Black-owned businesses in Oregon that were adversely affected by COVID-19. To be eligible for relief, businesses were required (1) to be based in Oregon, (2) to be at least 51% owned by a person or people who self-identify as Black, and (3) to demonstrate business interruption due to COVID-19. (Dec. 2 Sand Decl., ¶ 2.) Eligible applicants could apply only once. (Dec. 2 Sand Decl., ¶ 5.)

**C.  Plaintiff applies to the Fund and its application is permanently denied.**

On August 31, 2020, Plaintiff applied to The Contingent for a distribution from the Fund. (ECF 1, ¶ 13; Dec. 2 Sand Decl., ¶ 3.) The application was processed to the point of assessing that Plaintiff would have been eligible for a total award recommendation of $42,985.00 if Plaintiff met all eligibility requirements. The Contingent ultimately did not recommend this award because Plaintiff reported that its sole owner does not identify as Black. (Dec. 2 Sand Decl., ¶¶ 3, 4.) The Contingent denied Plaintiff's application and communicated that denial by email, sent on November 27, 2020. (Dec. 2 Sand Decl., ¶ 4 & Ex. 1.)

Page 3 - MOTION FOR PARTIAL SUMMARY JUDGMENT

**D.    Plaintiff applies to, and receives money from, another race-conscious relief fund funded with federal CRF moneys.**

On July 22, 2020, the City of Portland allocated $15 million to Prosper Portland to establish the Small Business Relief Fund. (Davidson Decl., ¶ 6 & Ex. 5 at 5.) That fund took a race-conscious approach:

> Distribution is guided by the city's Equity Toolkit and the knowledge that Black people, Indigenous people and all people of color have experienced the greatest impacts from the pandemic and need the most support. These funds will serve applicants across multiple demographic categories; all small businesses that meet the eligibility requirements will be considered.
>
> This round of funds has been informed by engagement and feedback from the Economic Recovery Task Force, the Council for Economic and Racial Equity, the Community Chamber Coalition of Oregon, City Council staff, the Inclusive Business Resource Network, the Neighborhood Prosperity Network, and cultural and industry-specific listening sessions.

(*Id*.) In the Fall of 2020, prior to filing this lawsuit, Plaintiff applied to that Small Business Relief Fund. In the application, Plaintiff's owner identified her race, national origin, and immigration status. (Davidson Decl., ¶ 7 & Ex. 6 at 2, 3, 5, 7, 8.) Plaintiff received $15,000 in federal CRF money from the Small Business Relief Fund. (Davidson Decl., ¶ 7 & Ex. 6 at 13 [$10,000 grant], 14 [$5,000 grant].)

**E.    Plaintiff files this action and moves for a preliminary injunction, which the Court denies.**

Plaintiff filed this action on November 20, 2020. (ECF 1.) Plaintiff prayed for the following relief:

      a. A declaratory judgment that Defendants are violating 42 U.S.C. §§ 1981, 1983, and 2000d et seq. by excluding Plaintiff from the benefits of the Fund because of its owner's race and national origin;

      b. Injunctive relief precluding defendants from continuing to exclude Plaintiff from the benefits of the Fund because of its owner's race and national origin;

      c. Damages in an amount to be determined;

      d. Attorney's fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, or any other applicable authority; and

      e. Any other relief that is appropriate.

(ECF 1 at 8; *see* ECF 1, ¶¶ 23, 27, 31.)

      On November 25, 2020, Plaintiff filed a motion for preliminary injunction. (ECF 16.) Plaintiff's motion prayed as follows:

      PLEASE TAKE NOTICE that Plaintiff Cocina Cultura hereby moves this Court for a preliminary injunction that enjoins Defendants, or any other person or entity acting in concert with them or under the authority of the State of Oregon, during the pendency of this action, from discriminating against Plaintiff by reason of its owner's race and national origin in distributing funds allocated to the state by the Federal government from the CARES Act's Coronavirus Relief Fund. Defendants' continuing operation of the $62 million Oregon Cares Fund for Black Relief and Resiliency (the "Fund") violates the Equal Protection Clause, 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964.

> Immediate relief is necessary, as Plaintiff has and continues to
> suffer irreparable harm from defendants' ongoing discrimination.

In support of the motion, Plaintiff argued, among other things, that it would suffer irreparable harm because (1) failing to receive moneys from the Fund would cost Plaintiff future profits that would be difficult to calculate, and (2) constitutional violations are *per se* irreparable. (ECF 16 at 12-15.)

The Court rejected both arguments, especially because The Contingent agreed to post Fund moneys in the amount of $46,853.65 as security (the "Deposit")—the amount that Cocina would have received from the Fund were Cocina eligible, plus one year of interest at the Oregon statutory rate. (ECF 36.) The Deposit remains in the Court registry and will be available for disbursement to The Contingent should the Court order such disbursement. (*Id*. at 3.)

**F.    The Fund closes to additional applications.**

On December 8, 2020, at 9:00 p.m., The Contingent closed the Fund to new applications because the amount applied for exceeded the amount remaining in the Fund. (Sand Decl., ¶¶ 7, 8.) On December 30, 2020, the Fund expired by its terms pursuant to the Emergency Board's requirements and the Grant Agreement. (*See* Davidson Ex. 7 at 1.) Both because applicants had only one opportunity to obtain a grant, and because The Fund expired, Plaintiff cannot reapply.

Since December 30, the Grant Agreement has been amended to reflect that The Contingent may continue to administer the Fund solely pursuant to Court order, or to a settlement agreement reached in the consolidated companion case (discussed below). (Davidson Ex. 8 at 1 "Project Activities," 4 "Settlement Administration".)

**G.    State Defendants, The Contingent and Great Northern Resources, Inc. reach a class-action settlement approved by the Court; Plaintiff was a member of the certified settlement class but opted out.**

The parties to this action and a companion case, *Great Northern Resources, Inc. v. Coba* (No. 20-cv-01866-IM) (the "GNR Matter"), reached a class-action settlement in principle on or about January 28, 2021. Following the parties' assent to a written settlement agreement (the

"GNR Settlement"), on March 19, 2021, the Court issued an Order Granting Motion for Preliminary Approval of Class Action Settlement (ECF 103), which preliminarily certified the following settlement class:

> All individuals, businesses, and nonprofits that submitted applications for funding to the Fund and/or The Contingent prior to December 9, 2020, and that have not indicated on their applications that they identify as Black, are a Black-owned business, or are a Black-focused organization.

(ECF 103 at 1 § 3) Plaintiff would have qualified to have its application processed pursuant to the GNR Settlement, but Plaintiff chose to opt out. (Davidson Decl., ¶ 10 & Ex. 9.) The Court granted final approval of the GNR Settlement on June 22, 2021, without modifying the class definition. (ECF 131 at 2 § 4.)

### III.

### ARGUMENT

**A.     Summary judgment standard.**

Federal Rule of Civil Procedure 56(a) authorizes a party to move for summary judgment on any claim or defense, or part of a claim or defense. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Summary judgment is warranted when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1223 (9th Cir. 2012), *republished as amended at* 698 F.3d 715 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Mootness is a question of law. *S. Oregon Barter Fair v. Jackson Cty., Oregon*, 372 F.3d 1128, 1133 (9th Cir. 2004).

B. **Declaratory and injunctive relief are moot and therefore should not be granted.**

1. **Legal standard for mootness of requests for equitable relief.**

Federal courts have jurisdiction only over "cases" and "controversies." U.S. Const. art. III, § 2. Standing is an aspect of this requirement. To have standing, a party must show an invasion of a legally protected interest that is concrete and particularized and actual or imminent. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). Where a plaintiff seeks both retrospective relief (damages) and prospective relief (declaratory or injunctive relief), that plaintiff must establish standing separately for each type of remedy. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (so noting); *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (same); *see Wise v. City of Portland*, No. 3:20-cv-01193-IM, 2021 WL 1950016, at *12 (D. Or. May 5, 2021) (dismissing claims for equitable relief as moot and noting that retrospective damages claims remain).

Standing must exist at all stages of a proceeding with respect to "each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Lyons*, 461 U.S. at 109. When it does not, "the case [or a claim for relief] has become moot, and its resolution is no longer within our constitutional purview." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005). Mootness often is described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Laidlaw*, 528 U.S. at 170.

A case becomes moot, and is no longer a case or controversy for purposes of Article III, when the issues are no longer live or the parties lack a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Mootness is a "flexible" doctrine and "not a legal concept with a fixed content or susceptible of scientific verification." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 400-401 (1980).

a. **Standard for mootness of declaratory relief.**

Article III's requirements "are not relaxed in the declaratory judgment context," and the

Declaratory Judgments Act, 28 U.S.C. § 2201 (2020), reflects those requirements. *Gator.com*, 398 F.3d at 1129; 28 U.S.C. § 2201(a) (authorizing declaratory judgments "[i]n a case of actual controversy" within a court's jurisdiction). The test for mootness in the declaratory judgment context is "whether the facts show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gator.com*, 298 F.3d at 1129 (quotations and citations omitted). Where, as here, a party argues that events subsequent to the filing of the complaint have mooted a request for declaratory judgment, "the central question" is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* (quotations and citations omitted).

### b.  **Standard for mootness of injunctive relief.**

Where a plaintiff cannot show that it will be disadvantaged in the future by a government program (especially one that has ended), there is no live issue upon which a court could issue prospective relief. *See Arizonans for Official English*, 520 U.S. at 67 (holding that action for injunctive relief became moot when the plaintiff no longer was subject to the challenged policy and there was no damages claim); *Outdoor Media Grp.,* 506 F.3d at 901-902 (citing *Noatak*, 38 F.3d at 1510) (holding that where there was "no longer any risk that Outdoor Media will be subject to the challenged ordinance, there exists no live issue upon which the court could issue prospective relief"); *see also Marks v. Colorado Dep't of Corr.*, 976 F.3d 1087, 1093 (10th Cir. 2020) ("When circumstances change and the court can no longer affect the plaintiff's rights, the case ordinarily becomes moot.") (citing *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)). This analysis applies to any claims for injunctive relief where the complained-of conduct has concluded, unless a plaintiff can demonstrate that it likely will experience the same wrongdoing in the future. *Marks*, 976 F.3d at 1094.

Indeed, the Ninth Circuit recently clarified circuit law on this point in *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (en banc). In that case, the Nevada Legislature had repealed the challenged law while the litigation was pending.

The Ninth Circuit held that the repeal, amendment, or expiration of challenged legislation creates a presumption that the action is moot and appropriate for dismissal unless there is a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future. *Id.* at 1197-99. Any argument that such "a reasonable expectation exists must be founded in the record" and may not be based "on speculation alone." *Id.* at 1199; *see also Laidlaw*, 528 U.S. at 174–75 (2000) (holding that plaintiffs lacked statutory standing to sue for violations that have ceased by the time the complaint is filed).

Likewise, changes in the conditions that had necessitated completed government programs can render equitable relief moot. *See, e.g., Wise v. City of Portland*, No. 3:20-cv-01193-IM, 2021 WL 1950016, at *8-*11 (D. Or. May 5, 2021) (Immergut, J.) (holding, among other things, that the abatement of large-scale social justice protests at the Hatfield Courthouse rendered protest medics' claims for equitable relief moot, and that *Bivens* relief was still available).

## 2. The Fund's closure and expiration render Plaintiff's requests for equitable relief moot.

Plaintiff seeks a declaration that the Fund was unconstitutional, and an injunction mandating consideration of Plaintiff's rejected application without regard to the racial self-identification of Plaintiff's owner. (ECF 1 at 17 (demanding consideration of Plaintiff's application); ECF 20 at 2 (plaintiff's post-rejection letter to the Court demanding "an injunction precluding defendants from discriminating against it"); Davidson Ex. 1, Tr. at 10:10-11:15.)

These requests are moot. The Fund closed to applicants as of 9 p.m. on December 8, 2020, because it was oversubscribed. The Fund then expired on December 30 pursuant to the Grant Agreement—as had been intended since the Emergency Board allocated moneys for the Fund's creation on July 14, 2020. Despite several rounds of injunction briefing in this consolidated action, Plaintiff has presented no evidence indicating that it is likely the Fund will be re-enacted. (*See* ECF 18 at 11 [Defendants noting, in irreparable harm context, that Plaintiff must show it is likely Plaintiff will be harmed in a similar way].) At all times, it has been

Plaintiff's burden to do so. *Wise*, WL 1950016, at *4 (D. Or. May 15, 2021) (quoting *Nelsen v. King Canty.*, 895 F.2d 1248, 1251 (9th Cir. 1990) ("The burden of showing a likelihood of recurrence is firmly on the plaintiff.")).

Plaintiff cannot satisfy that burden. The COVID-19 pandemic has abated. *See Wise*, 2021 WL 1950016 at *10 ("The frequent protests on which Plaintiff's equitable claims rely have also abated, further suggesting Plaintiffs' need for equitable relief has waned."). The Governor has lifted occupancy restrictions and other public health measures that had a financial impact on Oregon businesses generally and Plaintiff specifically. (Oregon Executive Order No. 21-15, June 25, 2021, attached as Davidson Decl., ¶ 11 & Ex. 10 [rescinding all remaining COVID-19 restrictions]; Declaration of Maria García, ECF 16-4 ¶¶ 4 ["In March 2020, I was forced to close the restaurant due to restrictions from the Covid-19 pandemic."], 5 ["In June 2020, I reopened the restaurant, but business dropped due to reduced traffic in downtown Portland."].) There is no indication that the federal government is likely to make another CRF allocation to the State. There also is no indication that the Legislature or Emergency Board will create another iteration of the Fund. Indeed, in the most recent Oregon legislative session—the first since the Fund's creation by the Emergency Board—the Legislature did not extend the Fund or create another COVID-19 relief fund for Black-owned businesses.

Furthermore, in federal COVID-19 relief packages since the initial CARES Act, Congress and the Executive Branch have taken steps to address the concerns underlying the Fund's urgent creation by expanding the access of minority-owned businesses to PPP moneys. *See, e.g.,* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Sec. 323(d)(1)(A)(i), 134 Stat. 1182 (2020) (requiring at least $15 billion to be allocated for guaranteeing PPP loans by community financial institutions); U.S. Small Business Administration Release No. 21-05, "SBA Re-Opens PPP to Community Financial Institutions First," (Jan. 11, 2021) (describing new opportunities for minority-owned businesses to seek PPP funds, and describing role of community financial institutions in providing those opportunities), attached as Davidson Ex. 11; U.S. Small Business Administration, "Paycheck Protection Program (PPP) Guidance on

Accessing Capital for Minority, Underserved, Veteran and Women-Owned Business Concerns," (Jan. 6, 2021) (detailing steps that Congress and SBA took to increase minority-owned businesses' access to capital through the renewed PPP program), attached as Davidson Ex. 12.

Plaintiff also cannot show that Plaintiff would be excluded from a future COVID-19 relief fund even if one were created. Nor can Plaintiff show that it would be eligible in the future for such a fund based on further COVID-related losses—losses that now appear unlikely to occur.

Where, as here, a government program ends and a plaintiff does not demonstrate a "credible threat" that the program will revive, any non-monetary claims arising from a plaintiff's participation in that program are moot. *See The Presbyterian Church (U.S.A.) v. U.S.*, 870 F.2d 518, 528-29 (9th Cir. 1989) (plaintiff must show a credible threat of future injury). There is nothing live about which to issue a declaration and no ongoing Fund-related conduct to enjoin. As this Court has held, "[t]he alleged unequal treatment of Plaintiff's Fund application constitutes a discrete past harm" and "Plaintiff will not face that alleged barrier again." (ECF 36 at 5.) This Court also noted that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, . . . if unaccompanied by any continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974), and held that Plaintiff had not established any "continuing, present adverse effects" that satisfy the irreparable harm requirement for a preliminary injunction. (ECF 36 at 6.) That has not changed. The Court should conclude that declaratory and injunctive relief are moot and therefore no longer available as remedies in this action.

## C. **Plaintiff cannot obtain injunctive relief as to the Fund because, as this Court already determined, Plaintiff cannot establish irreparable harm.**

To obtain a permanent injunction, Plaintiff must prove:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of

        hardships between the plaintiff and defendant, a remedy in equity

        is warranted; and (4) that the public interest would not be disserved

        by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-157 (2010).

    Plaintiff's request for injunctive relief fails not only because it is moot, but also because Plaintiff cannot establish any likelihood of irreparable harm. In opposing Plaintiff's motion for a preliminary injunction, Defendants argued that Plaintiff could not make the required showing because its harm was compensable with money damages and the Deposit further removed the potential for irreparable injury. This Court agreed, ruling that "Plaintiff cannot show irreparable harm," and denied its application for a preliminary injunction. (Opinion and Order, ECF 36 at 3.)

    The Court's Opinion and Order detailed the many ways that Plaintiff failed to establish the irreparable harm necessary for injunctive relief. In addition to its finding that all of the purported harm was completed, the Court found that Plaintiff's harm is grounded in the money Plaintiff claims it should have been awarded. (*See id.* at 7.) This Court thus already determined that Plaintiff cannot support its request for injunctive relief. This is the law of the case. *See Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 952 (9th Cir. 2019) (noting that law-of-the-case doctrine "generally precludes reconsideration of an issue that has already been decided by the same court, or a higher court in the identical case"). There is no reason to revisit this conclusion, and indeed, Plaintiff's request for an injunction only has become weaker—given the closure and expiration of the Fund, and improved economic and public health conditions—since the Court's earlier determination.

**D.**    **Even if declaratory relief is not moot, the Court should exercise its "unique and substantial discretion" to withhold it.**

    In the Complaint, Plaintiff requests "[a] declaratory judgment that Defendants are violating 42 U.S.C. §§ 1981, 1983, and 2000d et seq. by excluding Plaintiff from the benefits of the Fund because of its owner's race and national origin." (ECF 1 at 8.)[3] Setting aside the

---

[3] Contrary to the Complaint's allegations, the Fund was not restricted based on national origin,

mootness issue, the Court should dismiss the request for declaratory relief in its sound discretion.

Declaratory relief is discretionary. "In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested arty seeking such declaration," 28 U.S.C. § 2201(a) (emphasis added). The Court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). In determining how to exercise such discretion, the Court may consider "equitable, prudential, and policy arguments." *Id.* at 136.

Equitable considerations favor withholding declaratory relief. Despite alleging that it seeks declaratory relief in order to have its Fund application processed on a race-neutral basis, Plaintiff opted out of the GNR Settlement that would have provided race-neutral consideration of its application. (*See* ECF 93, ¶¶ 13, 70.) The Court should exercise its discretion not to grant declaratory relief to a party that refused the very relief it asks the Court to grant.

E.     **Plaintiff may not pursue an injunction to obtain relief that was offered to Plaintiff but which Plaintiff rejected by opting out of the GNR Settlement.**

When Plaintiff filed its complaint, it sought "[i]njunctive relief precluding defendants from continuing to exclude Plaintiff from the benefits of the Fund because of its owner's race and national origin."[4] (ECF 1 at 8.) Through the GNR Settlement, Defendants offered Plaintiff precisely that relief. (*See* ECF 93, ¶¶ 13, 70.) Plaintiff turned it down. This Court should decline to exercise its powers of equity under such circumstances. The Court should not permit Plaintiff to manufacture a "controversy," within the meaning of Article III, section 2, by refusing to accept an offer of the relief that Plaintiff seeks through its complaint. Under the circumstances, the Court should exercise its discretion to withhold injunctive relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for

---

which is different from race.

[4] Again, the Fund had no national origin requirement.

abuse of discretion."); *Barret v. Premo*, 101 F. Supp. 3d 980, 998 (D. Or. 2015) ("The party seeking a permanent injunction must satisfy the court that relief is needed." [citation omitted]).

## IV.
## CONCLUSION

This is a damages case. Declaratory and injunctive relief are unavailable because they are moot. Further, the Court should exercise its considerable discretion in denying such relief because Plaintiff opted out of a settlement that would have provided the same relief that it asks this Court to order in equity. Additionally, the request for injunctive relief fails because Plaintiff cannot show irreparable harm. The Court should grant the motion for partial summary judgment and dispose of the requests for equitable relief.

Dated: July 7, 2021

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

SNELL & WILMER L.L.P.


/s/ Clifford S. Davidson
Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
   *Special Assistant Attorney General*
Kelly H. Dove, OSB No. 082165
kdove@swlaw.com
Alexix G. Terríquez (admitted *pro hac vice*)
aterriquez@swlaw.com

Fay Stetz-Waters, OSB No. 071789
Fay.stetz-waters@doj.state.or.us
Sheila H. Potter, OSB No. 993485
Sheila.potter@doj.state.or.us

*Attorneys for Defendants State of Oregon, Oregon Department of Administrative Services, and Katy Coba, in her Official Capacity as State Chief Operating Officer and Director of the Oregon Department of Administrative Services*