# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **COCINA CULTURA LLC, an Oregon limited liability company**, | Case No. 3:20-cv-01866-IM (Lead)<br>Case No. 3:20-cv-02022-IM (Trailing) |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **STATE OF OREGON; OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; KATY COBA, in her Official Capacity as State Chief Operating Officer and Director of the Oregon Department of Administrative Services; THE CONTINGENT, an Oregon nonprofit corporation; THE BLACK UNITED FUND OF OREGON, INC., an Oregon nonprofit corporation**, | |
| Defendants. | |

Michael Rosman and Michelle Ann Scott, Center for Individual Rights, 1100 Connecticut Ave. N.W., Ste 625, Washington, DC 20036; Shawn M. Lindsay, Harris Berne Christensen LLP, 15350 SW Sequoia Parkway, Suite 250, Portland, OR 97224. Attorneys for Plaintiff.

Ellen Rosenblum, Attorney General for the State of Oregon; Fay Stetz-Waters and Sheila H. Potter, Department of Justice for the State of Oregon; Clifford S. Davidson, Kelly H. Dove, and Alexix G. Terríquez, Snell & Wilmer LLP, One Centerpointe Drive, Ste 170, Lake Oswego, OR 97035; Amanda T. Gamblin and Nicholas F. Aldrich , Jr., Schwabe, Williamson & Wyatt, 1211 SW 5th Ave, Ste. 1900, Portland, OR 97204. Attorneys for Defendants.

**IMMERGUT, District Judge.**

This Opinion and Order addresses three motions: (1) State Defendants' Motion for Partial Summary Judgment ("MPSJ"), ECF 137; (2) State Defendants' Motion to Bifurcate the Case and Stay Liability Proceedings, ECF 144; and (3) Plaintiff Cocina Cultura's MPSJ, ECF 152.[1] For the following reasons, this Court grants Defendants' MPSJ, finding Plaintiff's injunctive and declaratory relief claims moot, and grants Defendants' motion to reverse-bifurcate this case between damages and liability, addressing damages first and staying the liability phase. The Court finds that the interests of efficiency, constitutional avoidance, and judicial restraint favor this approach. Because Cocina Cultura's MPSJ concerns liability, this Court denies it with leave to refile if appropriate.

## BACKGROUND

### A. Factual Background

This lawsuit concerns the Oregon Legislative Emergency Board's allocation of $62 million of federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act money to Defendant Oregon Department of Administrative Services ("DAS") to establish a fund available only to Oregon-based businesses majority-owned by persons self-identifying as Black; Oregon-based community organizations primarily serving the Black community; and Oregon-based individuals who self-identify as Black. That Fund is known as the Oregon Cares Fund for Black Relief and Resiliency (the "Fund"). ECF 1 at ¶¶ 5, 9–12, 29; ECF 16-3 at 2–3. DAS entered into a Grant Agreement with defendant The Contingent, an Oregon-based non-profit with existing

---

[1] Unless specified as a *Great Northern Resources, Inc., et al. v. Coba et. al.*, Case No. 3:20-cv-01866-IM ("*Great Northern*") docket entry, all ECF numbers in this Opinion and Order refer to docket entries in *Cocina Cultura LLC et al v. State of Oregon et. al.*, Case No. 3:20-cv-02022-IM ("*Cocina Cultura*").

programs that serve Oregon's Black community, to administer the Fund. ECF 16-3 at 2–3, 20; ECF 140, Sand Decl., at ¶ 2. The Contingent subcontracted with Black United Fund of Oregon, Inc. to process certain of the applications. ECF 140, Sand Decl., at ¶ 3. The Grant Agreement provided that the Grant "has a Grant funding start date as of March 1, 2020 ('Effective Date'), and, unless extended or terminated earlier in accordance with its terms, will expire on December 30, 2020." ECF 138-1 at 37.

Plaintiff Cocina Cultura, LLC operated a small restaurant in downtown Portland that served imported Mexican coffee and authentic Mexican meals. ECF 1 at ¶ 8; ECF 16-4, First Garcia Decl., at ¶ 2. Maria Garcia, a Mexican-American immigrant, is the sole owner of Cocina Cultura, LLC. ECF 16-4, First Garcia Decl., at ¶¶ 2–3. Ms. Garcia was forced to close the restaurant on August 22, 2020, due to the COVID-19 pandemic. *Id*. at ¶ 6. Since then, Ms. Garcia states she has been engaged in "research and development to devise products and business methods to successfully reach existing and new customers" in the rapidly changing market. *Id*. at ¶ 7; ECF 154, Third Garcia Decl., at ¶ 6. Ms. Garcia applied for a grant from the Fund in August 2020. ECF 16-4, First Garcia Decl., at ¶¶ 9–10; ECF 25, Sand Decl., at ¶ 3. On November 20, 2020, Plaintiff filed its Complaint. ECF 1. Plaintiff's grant application was denied on November 27, 2020. ECF 25, Sand Decl., at ¶ 4.

## B.  Procedural History of Related Lawsuits and Settlement

Cocina Cultura's case was filed about a month after another case challenging the same Fund, *Great Northern Resources, Inc., et al. v. Coba et. al.*, Case No. 3:20-cv-01866-IM ("*Great Northern*"). *Great Northern* was initially filed on behalf of a single named plaintiff but was amended on December 6, 2020 as a class action complaint. *Great Northern*, ECF 1; *Great Northern*, ECF 32. Before *Great Northern* became a class action lawsuit, plaintiffs in both the

instant case ("*Cocina Cultura*") and *Great Northern* filed motions for a temporary restraining

order ("TRO") or preliminary injunction to enjoin the Fund. ECF 16 (November 25, 2020);

*Great Northern*, ECF 12 (November 7, 2020). In both cases, Defendant The Contingent posted a

bond with this Court covering what each plaintiff might be entitled to if it ultimately won on the

merits. ECF 23; ECF 34; *Great Northern*, ECF 17; *Great Northern*, ECF 26. Additionally,

plaintiffs in both cases had already submitted applications to the Fund, which by its terms only

accepted one application per applicant. Because the plaintiffs could not demonstrate the threat of

irreparable harm due to that alleged past injury, this Court denied each motion's request for the

extraordinary, forward-looking relief of a TRO or preliminary injunction. *See generally* ECF 36;

*Great Northern*, ECF 27; *Great Northern*, ECF 28.

Two days after *Great Northern* was amended to become a class action suit on December

6, 2020, this Court ordered *Cocina Cultura* to be consolidated with *Great Northern*. *See* ECF 37

(December 8, 2020 consolidation order); *Great Northern*, ECF 32 (December 6, 2020 First

Amended Class Action Complaint). Both lawsuits alleged that Defendants are violating Title VI

of the Civil Rights Act of 1964 (exclusion based on race and national origin by a recipient of

federal funds), 42 U.S.C. § 1981 (alleging contract exclusion based on race and national origin),

and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

*See* ECF 1 at ¶¶ 19, 25–26, 30 (Cocina Cultura's Complaint); *Great Northern*, ECF 32 at ¶¶ 75,

77–79 (First Amended Class-Action Complaint). In the evening of December 8, 2020, The

Contingent closed the Fund to new applications because the amount applied for exceeded the

amount remaining in the Fund. *Great Northern*, ECF 50, Sand Decl., at ¶¶ 7–8.

On December 11, 2020, the *Great Northern* plaintiffs, including named plaintiffs who

had not yet applied to the Fund, again moved for a TRO. ECF 42. Shortly before the scheduled

TRO hearing, The Contingent moved to deposit all remaining funds in the Oregon Cares Fund with the Court, and the parties agreed at the hearing held on the TRO motion that the motion was therefore moot. ECF 60; ECF 61.

On December 30, 2020, the Fund expired by its terms pursuant to the Emergency Board's requirements and the Grant Agreement. ECF 138-1 at 37. On March 10, 2021, the Grant Agreement was amended. *See* ECF 138-1 at 58–62. That amendment "extend[ed] the expiration date solely for the purpose of helping to effectuate a settlement in [*Great Northern*]." *Id*. at 58. This amendment reflected that The Contingent may continue to administer the Fund solely pursuant to Court order, or to a settlement agreement reached in *Great Northern*. *Id.* at 58–62.

In March 2021, the *Great Northern* parties agreed to settle the case. *See* ECF 93 (joint motion for preliminary approval of class action settlement). The named plaintiffs who had not applied to the Fund settled and voluntarily dismissed their claims with prejudice. *Id*. at 4; *see also Great Northern*, ECF 88; *Great Northern*, ECF 96; *Great Northern*, ECF 97 (Court order approving proposed settlement between Defendants and non-applicant named plaintiffs); *Great Northern*, ECF 106 (notice of dismissal with prejudice dated April 7, 2021). The *Great Northern* settlement class included "all individuals, businesses, and nonprofits that applied to the Fund prior to December 8, 2020, whose applications do not indicate that the applicant identifies as Black, or as a Black-owned business or Black-focused organization." ECF 93 at 5 (emphasis omitted). The relief for the settlement class was to have their Fund applications processed and to receive funding as appropriate based on those applications. *Id.* at 7. The class totaled 1,155 class members, of which four class members validly opted out. ECF 121, Urdaneta Decl., at ¶ 3; ECF 127, Supplemental Urdaneta Decl., at ¶ 3 (declarations of Victoria Urdaneta, Assistant Director of Operations at Settlement Administrator). Cocina Cultura was one of the four class members

who opted out of the *Great Northern* settlement. *See* ECF 127, Supplemental Urdaneta Decl., at ¶ 3; ECF 136 at 2 (class action judgment); ECF 138-1 at 63 (Cocina Cultura opt-out letter).

This Court approved the class action settlement, and the *Great Northern* litigation terminated on June 24, 2021. *See* ECF 103 (preliminary approval order); ECF 106 (approval order); ECF 135 (order granting fees, expenses, and service award); ECF 136 (class action judgment). The *Great Northern* parties moved during this process to disburse the funds previously deposited with this Court, and this Court granted those motions. *See* ECF 97 (March 12, 2021); ECF 107 (March 25, 2021 order); ECF 112; ECF 132 (June 22, 2021 proposed form of order); ECF 134 (June 24, 2021 order); ECF 142. The funds deposited by The Contingent for Cocina Cultura's potential recovery on the merits remain with this Court. *See* ECF 137 at 4, 9; ECF 36 at 3; *Great Northern*, ECF 85-1 at 1 (listing deposits and proposed disbursements).

Meanwhile in *Cocina Cultura*, the parties disputed whether the case should be stayed pending resolution of *Great Northern*. ECF 110; ECF 114; ECF 115. On April 6, 2021, this Court granted the State Defendants' motion to stay discovery in *Cocina Cultura*. ECF 116. This Court ordered that all discovery in *Cocina Cultura* was stayed until July 9, 2021, and that any motions for renewal of the stay must be submitted by June 28, 2021. *Id.*

## C. The Present Briefing Before This Court

On July 7, 2021, State Defendants moved for partial summary judgment on Plaintiffs' declaratory and injunctive relief claims. ECF 137.[2] On July 23, 2021, State Defendants moved to

---

[2] The Contingent joined in the State Defendants' motion. ECF 143. Plaintiff Cocina Cultura voluntarily dismissed Defendant Black United Fund, Inc. on February 18, 2021. ECF 88. Accordingly, the motion speaks for all remaining defendants.

bifurcate the case between liability and damages, and to stay the liability phase, assuming the

Court granted State Defendants' motion for partial summary judgment. ECF 144.[3]

On August 10, 2021, Cocina Cultura moved for partial summary judgment on the issue of

liability, arguing that Defendants' "use of race as a determinative factor in awarding grants from

the [Fund] violates the Equal Protection Clause . . ., Title VI, and 42 U.S.C. § 1981." ECF 152 at

2. On August 12, 2021, State Defendants requested that this Court hold in abeyance briefing on

Plaintiff's MPSJ pending resolution of State Defendants' earlier pending motions. ECF 157. This

Court granted that request on August 18, 2021. ECF 158.

---

[3] The Contingent joined in this motion as well. ECF 147. Additionally, State Defendants filed a notice withdrawing portions of this bifurcation motion and supporting declaration which discuss a Rule 68 Offer of Judgment that Defendants served on Plaintiff. ECF 150. State Defendants state that they provided the Rule 68 offer discussion "as factual background" but withdraw it "to streamline the issues" for review. *Id.* at 2. In its responsive brief, Cocina Cultura argues that Defendants included the Rule 68 offer discussion in "an effort to bias the Court against Cocina Cultura by depicting it as unreasonable." ECF 151 at 4. Cocina Cultura asks this Court to deny the motion, sanction Defendants, or order Defendants to show cause why they have not violated Rule 11(b). *Id.* at 3–4, 4 n.4. In reply, State Defendants argue that Rule 68 is read in harmony with Federal Rule of Evidence 408, which permits evidence of unaccepted offers for purposes unrelated to liability. ECF 159 at 4 (citing *Thomas v. L. Firm of Simpson & Cybak*, 244 F. App'x 741, 744 (7th Cir. 2007) (unpublished); *see also Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161–62 (9th Cir. 2007); *Fogelman v. Oregon*, No. 6:14-cv-2027-MC, 2015 WL 1822911, at *1 (D. Or. Apr. 15, 2015)). State Defendants argue there "was nothing improper about raising the Rule 68 offer as a background fact meant to underscore State Defendants' interest in conserving resources." ECF 159 at 4. This Court finds that Defendants did not raise the Rule 68 offer for an improper purpose. In their bifurcation motion, they state that they "desire an expeditious and efficient resolution of this action," and "[t]o that end," recently settled *Great Northern* and made a Rule 68 offer of judgment. ECF 144 at 3–4. At the end of this section of the brief, State Defendants reaffirm their point that bifurcation "is the most efficient way to resolve this case." *Id.* at 4. The context of the Rule 68 reference demonstrates that the purpose of its inclusion was to underscore Defendants' own strong interest in efficiently ending this action. Further, in reviewing the cases that State Defendants rely on for their arguments in support of bifurcation and that "payment will moot the case,", this Court found relatively in-depth discussions of Rule 68 offers. *See generally Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1605 (2019); *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340 (2d Cir. 2005); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016). Rule 68 offers appear relevant to this area of the law. On this record this Court finds that Defendants have not violated Rule 11(b).

## DISCUSSION

This Court analyzes each motion in turn.

### A.  Plaintiffs' Injunctive and Declaratory Relief Claims Are Moot

#### 1.  Arguments

In their MPSJ, State Defendants argue that Plaintiff's declaratory and injunctive relief claims are moot because the Fund "has closed and expired; the COVID-19 pandemic has abated; and there is no basis for this Court to conclude that the State will create another COVID relief fund with race-conscious criteria that would exclude Plaintiff." ECF 137 at 2. Defendants argue that this Court does not have jurisdiction to issue the advisory opinion Plaintiff seeks, declaring that a closed fund *was* unconstitutional. ECF 137 at 4.

In response, Cocina Cultura concedes the Fund has expired but argues the case is not moot because a "defendant's failure to recognize the illegality of its old practice is a sufficient basis to establish a reasonable possibility of repetition." ECF 149 at 2, 5, 10. Cocina Cultura also argues that a challenge to an economic stimulus payment program "necessarily implicates the capable of repetition yet evading review exception to mootness." *Id*. at 12–15 (citing *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975–76 (2016)). Cocina Cultura notes that on March 11, 2021, President Biden signed a new appropriations law providing COVID-19 related funds, the American Rescue Plan Act ("ARPA"). *Id*. at 11. Cocina Cultura also provides a press release issued by Governor Kate Brown in response to the *Great Northern* settlement. *See* ECF 149-2 at 1–2. In this press release, the Governor commits to collecting data to support investment in "communities that have faced ongoing systemic oppression and exclusion," and Ms. Nkenge Harmon Johnson, "one of the [F]und's architects" and the chief executive of the Urban League of Portland, says the Fund "illustrated the wisdom of addressing disproportionate impacts on the Black Oregonians through narrowly tailored remedies." ECF

149-2 at 2. Lastly, Cocina Cultura argues that, assuming it bears the burden on summary judgment to show there is a reasonable likelihood of similar legislation in the future, it should "be entitled 'to take discovery' on some of the legislation and governmental action it has identified . . . ." ECF 149 at 15 (quoting Fed. R. Civ. P. 56(d)); *see also id.* at 18.

In reply, Defendants argue that it is Plaintiff's burden to overcome the presumption of mootness where a legislative program has expired, and that Plaintiff has not shown a reasonable expectation that the Fund or something like it will be enacted in the future. ECF 155 at 3–11. Defendants also argue that they are "not required to repudiate the expired Fund for equitable relief to be moot." *Id.* at 11–13. Lastly, Defendants contend that Plaintiff is not entitled to discovery for purposes of addressing Defendants' MPSJ. *Id.* at 19–21.

### 2. Analysis

Rule 56(a) authorizes a party to move for summary judgment on any claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Mootness is a question of law. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1133 (9th Cir. 2004).

A plaintiff must establish standing separately for each type of remedy sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 111 (1983); *see also Wise v. City of Portland*, No. 3:20-cv-01193-IM, 2021 WL 1950016, at *12 (D. Or. May 5, 2021) (dismissing claims for equitable relief as moot and noting that retrospective damages claims remain). When a plaintiff seeks prospective relief in the form of an injunction or a declaratory judgment, a plaintiff must show

"injury in fact" by "demonstrat[ing] 'that he is realistically threatened by a *repetition* of [the alleged violation].'" *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (quoting *Lyons*, 461 U.S. 95, 109 (1983)), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)) (emphasis in original); *see also Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (noting a declaratory judgment is a form of prospective relief).

In the usual case of assessing mootness, the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Friends of the Earth*, 528 U.S. at 189). An exception to mootness exists for alleged injuries that are capable of repetition but evade review. That exception applies "only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware*, 136 S. Ct. at 1976 (alterations, citations, and internal quotation marks omitted).

Where a governmental defendant has stopped the activity challenged in a lawsuit, the Ninth Circuit's mootness doctrine traditionally has required consideration of (1) "the procedural safeguards insulating the new state of affairs from arbitrary reversal," and (2) "the government's rationale for its changed practice(s)" in determining whether there is such a reasonable expectation of recurrence. *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018) (internal quotation marks and citations omitted). The first consideration goes to the relative procedural ease with which the defendant may restart its past conduct. Accordingly, a "statutory change is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. The rigors of the legislative process

bespeak finality and not for-the-moment, opportunistic tentativeness." *Id.* at 1038 (citations, ellipses, and internal quotation marks omitted).

The second consideration includes evaluating whether the defendant has renounced its prior conduct. Where the government has procedural "ease" to "relapse," "the government's unambiguous renunciation of its past actions" is particularly significant. *Id.* at 1039; *see, e.g., Armster v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 806 F.2d 1347, 1359–61 (9th Cir. 1986) (finding voluntary cessation case not moot where, among other things, Justice Department "never conceded that the initial suspension of jury trials was unlawful" and the causal vector of the unlawful decision—lack of sufficient funding to support jury trials—"is more than likely to recur in these times of budget austerity"); *McCormack*, 788 F.3d at 1025 (finding voluntary cessation case where prosecutor's offer of immunity from prosecution "seem[ed] timed to anticipate suit, and there is probability of resumption"; noting that while a statutory change is usually enough to render a case moot, prosecutor's executive action was "not governed by any clear or codified procedures" and he had "ease" to make the "discretionary decision" to prosecute or not; that discretionary decision was "neither entrenched nor permanent" citations and internal quotation marks omitted)); *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020) (explaining, in case challenging federal agency competitive grant cycle criteria, where future cycle was expected, that "declination to renounce a practice is sufficient to satisfy the exception") (citation omitted); *City of Los Angeles v. Barr*, 929 F.3d 1163, 1173 (9th Cir. 2019) (same).

Two years ago, in *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (en banc), the Ninth Circuit clarified its mootness doctrine with respect to legislative actions. The en banc panel explained:

> [W]e should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision, or in allowing it to expire. Therefore, in determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.

*Id.* at 1199.

With respect to burdens, the en banc panel stated that "[t]he *party challenging the presumption of mootness* need not show that the enactment of the same or similar legislation is a 'virtual certainty,' only that there is a reasonable expectation of reenactment. But a determination that such a reasonable expectation exists must be founded in the record . . . rather than on speculation alone." *Id.* (emphasis added). Notably, *Glazing Health* placed the burden on the plaintiff to show the case is *not* moot. *See id.*; *see also Rentberry, Inc. v. City of Seattle*, 814 F. App'x 309, 309 (9th Cir. 2020) (mem.), *cert. denied sub nom. Rentberry, Inc. v. City of Seattle, Washington*, 141 S. Ct. 1061 (2021) (finding that parties opposing mootness "have not met their burden"). Accordingly, where the challenged action is legislation that has expired, the party opposing mootness must demonstrate that the mootness exception applies: the plaintiff must overcome the presumption of good faith afforded to the state legislature and demonstrate that a reasonable expectation of recurrence exists. *See Glazing Health*, 941 F.3d at 1199.

Here, while the Fund's duration likely was too short to be fully litigated prior to cessation or expiration, *see Planned Parenthood*, 946 F.3d at 1110 (collecting cases on duration period), Plaintiff has failed to show there is a reasonable expectation that the same complaining party will be subject to the same or similar action again. Unlike most "[a]gencies' cyclical contracts and grants" that "often satisfy the [mootness] exception," *id.*, the Fund was enacted by the State Legislature, not an agency or other governmental body, and so there is a presumption of mootness upon its expiration. It was also enacted to be, and functioned as, a singular, emergency,

one-time grant program, using a specific, limited allocation of federal money—not as one cycle

in a recurring grant program. *See* ECF 53 at ¶¶ 9–10 (Emergency Board members' December 15,

2020 declaration providing that they "voted to approve creation of the Fund" because, among

other things, the "race-conscious Fund would exist no longer than necessary to try to remedy the

harms we had identified, and in any event, no longer than December 30, 2020").

The parties emphasize two significant aspects of mootness doctrine in arguing whether

there is a reasonable expectation of recurrence. Defendants focus on the fact that the Fund was

created by legislative enactment and has naturally expired, which brings it within the scope of

*Glazing Health*. *See, e.g.,* ECF 137 at 12–15. Plaintiff emphasizes that Defendants refuse to

repudiate the Fund, arguing that this is sufficient to show the case is not moot. ECF 149 at 7–11.

While "the government's unambiguous renunciation of its past actions can compensate

for the ease with which it may relapse into them," *Fikre*, 904 F.3d at 1039, it does not appear that

after *Glazing Health*, an unambiguous renunciation is *necessary* for a finding of mootness where

there is not such ease of relapse, *i.e.*, upon the expiration of challenged legislation. Indeed,

*Glazing Health*'s placing of the burden on the plaintiff to show the case is *not* moot, and to do so

based on the record, strongly suggests that Defendant's insistence in this case that past conduct

was constitutional is immaterial. If this were dispositive, as Plaintiff argues, then the plaintiff

could essentially shift the burden on mootness back to the defendant without providing any

evidence, simply by demanding that the defendant repudiate past conduct. But under *Glazing*

*Health*, Plaintiff bears the burden of demonstrating, based on the record, why there is a

reasonable expectation of recurrence even though the State Legislature is confined by "clear or

codified procedures" and cannot make a purely discretionary decision with "ease." *McCormack*,

788 F.3d at 1025; *Glazing Health*, 941 F.3d at 1199. The mere fact that the State Defendants

decline to repudiate the Fund does not demonstrate such reasonable expectation. That argument does not rely on evidence in the record; it does not show the State Legislature even desires to create a same or similar program going forward; and it does not show the State Legislature will be capable of overcoming the substantial procedural hurdles to do so. Moreover, undoubtedly, the filing of this lawsuit, and the filing and settlement of a roughly 1,150-member class action in *Great Northern*, will cause the legislature to very carefully evaluate any future efforts to create a same or similar program going forward.

Plaintiff has not met its burden of showing a reasonable expectation of recurrence based on the record. Rather, the record demonstrates that the case is moot. Accordingly, Plaintiff's claims for injunctive and declaratory relief are moot.

### 3. Plaintiff has not shown it is entitled to take discovery to oppose Defendants' MPSJ under Rule 56(d)

Plaintiff argues that Defendants' MPSJ is premature because discovery has "barely commenced." ECF 149 at 15. Plaintiff argues that it should be entitled to take discovery "on some of the legislation and governmental action it has identified," namely the recent ARPA signed by President Biden. *See id.* at 11, 15. Plaintiff states that it has "been diligent in pursuing evidence and identify[ing] what discovery is needed to oppose summary judgment." *Id.* at 18. Plaintiff states that "further discovery may enable Plaintiff to uncover evidence of Defendants' plans for use of the new stimulus funds under ARPA, as well as other evidence documenting the basis on which Defendants base their conclusion that the Fund's racial set aside was necessary and legal." *Id.*

Defendants respond that Plaintiff has not satisfied Rule 56(d)'s procedures for requesting discovery to oppose a summary judgment motion. ECF 155 at 19–20. Defendants also state that Plaintiff's prior discovery requests do not relate to mootness but rather only to the expired Fund

itself, "even though the relevance of [mootness] discovery should have been apparent." *Id*. at 21

(citing *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (affirming

dismissal on jurisdictional grounds prior to moving party's response to pending discovery

requests because they "were largely unrelated to the facts central to the jurisdictional issues")).

Rule 56(d) provides: "If a non movant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition," the court may defer

or deny a motion for summary judgment or "allow time . . . to take discovery." Fed. R. Civ. P.

56(d). While a party making a Rule 56(d) request cannot "predict with accuracy precisely what

further discovery *will* reveal," "the evidence sought must be more than the object of pure

speculation." *Stevens v. Corelogic, Inc*., 899 F.3d 666, 678 (9th Cir. 2018) (internal quotation

marks and citation omitted) (emphasis in original). Rather, a "party seeking to delay summary

judgment for further discovery must state what other *specific* evidence it hopes to discover [and]

the relevance of that evidence to its claims." *Id*. (internal quotation marks and citation omitted)

(emphasis and alteration in original). The "requesting party must show that: (1) it has set forth in

affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought

exist; and (3) the sought-after facts are essential to oppose summary judgment." *Id*. (quoting

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp*., 525 F.3d 822, 827 (9th Cir.

2008)) (emphasis in original) (alterations omitted). "Failure to comply with these requirements is

a proper ground for denying discovery and proceeding to summary judgment." *Fam. Home &

Fin. Ctr., Inc.*, 525 F.3d at 827 (quotation marks and citation omitted).

Plaintiff has failed to satisfy these requirements. In the Scott Declaration, counsel for

Plaintiff avers:

> Plaintiff intends to seek discovery on topics related to the State Defendants' plans for
> spending the recent federal moneys received pursuant to the American Rescue Plan Act.

> For example, Plaintiff intends to seek information regarding the data on race and ethnicity that State Defendants have gathered for use in distributing the new stimulus funds made available to the state through the American Rescue Plan Act; and communications pertaining to plans for distribution and administration of the ARPA funds, or the eligibility criteria therefore.

ECF 149-1, Scott Decl., at ¶ 5. Plaintiff also provides three exhibits: (1) a press release from the Governor's Office about the *Great Northern* settlement which quotes the Governor and Ms. Nkenge Harmon-Johnson, "one of the fund's architects," ECF 149-2 at 1–2; (2) an article describing Oregon's receipt of $2.6 billion from the American Rescue Plan, *id*. at 4–8; and (3) an article summarizing Oregon's 2021 legislative session, *id*. at 12–18.

The Scott Declaration does not explain or show, as required, what facts are "essential to oppose summary judgment." *Stevens*, 899 F.3d at 678. Nor does the Scott Declaration provide support for the necessary proposition under Rule 56(d) that the sought facts—which must demonstrate a reasonable expectation that the State Legislature will enact a same or similar program in the future—in fact exist. *See Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998) (affirming denial of request for further discovery where affidavit did not "provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described in his affidavit. Moreover, a review of the record [shows the affidavit] is based on nothing more than wild speculation."). The Scott Declaration appears to simply assume that the State has already collected certain data and intends to use ARPA funds to create a Fund-type program but provides no fact-based support for these assumptions. *See* ECF 149-1, Scott Decl., at ¶ 5.

The exhibits also do not support further discovery. The quoted individuals in the press release, the Governor and a non-governmental third party, are not members of the legislature. These individuals' statements do not overcome the presumption of good faith afforded to the

State Legislature, a distinct branch of government, that it will not recreate the challenged Fund or something similar. *See Glazing Health*, 941 F.3d at 1199 ("[W]e should assume that a *legislative body* is acting in good faith . . . unless there is a reasonable expectation that the *legislative body* will reenact . . . ." (emphases added)).

In any event, even if this press release reflected on the Legislature's good faith, the statements in this press release do not suggest that the "sought facts" exist. Governor Brown asserts repeatedly her commitment "to increasing state agency data collection efforts, which will facilitate further investments targeted for communities of color and vulnerable populations." ECF 149-2 at 1; *see also id.* at 2 (explaining the Governor "committed to working with legislators, agency directors, and stakeholders to increase the state's collection of disaggregated data on race and ethnicity"; quoting Governor as saying "we need to focus on increasing the state's data collection efforts" (internal quotation marks omitted)). The Governor does not announce that she will be signing a new Fund (or COVID-19 relief like it) into law or creating one through executive order, nor does she ask legislators or executive agencies to create such a fund.[4] The Governor's commitment to gather data has no time frame and could take years. *See Rentberry*, 814 F. App'x 309, 309 (mem.) (finding challenge to repealed city ordinance moot despite "language of the repeal ordinance" and "[city's] efforts to gather data on the impact of rent-bidding platforms"). Such a commitment does not support a reasonable expectation that Defendants will again engage in the conduct Plaintiff challenges as unconstitutional, let alone that they have already started collecting data to that end and will be creating a similar program

---

[4] Rather, the "pieces of legislation" described in this press release as 2021 legislative session topics do not include any grants or loan programs. *See* ECF 149-2 at 2 (mentioning "addressing current discrimination in rental criteria, criminal justice reform, diversifying our educator workforce . . ., environmental justice and other key priorities centered in and around racial justice").

with ARPA money. Alongside the Governor's repeated statements focusing on future data

collection, Ms. Harmon Johnson (who is not a member of the Oregon government) saying that

the Fund "illustrated the wisdom of addressing disproportionate impacts on the Black

Oregonians through narrowly tailored remedies," ECF 149-2 at 2, does not create a reasonable

expectation that the Legislature will create a same or similar fund. The press release, which

quotes two individuals not in the State Legislature, and which makes its only concrete

commitment to collecting data at some vague time in the future, does not support extending

discovery under Rule 56(d).

Plaintiff's Exhibits 2 and 3 also do not support extending discovery under Rule 56(d).

Neither mentions a same or similar program. Rather, these exhibits show that Oregon received

ARPA money on March 11, 2021, and that the State Legislature was in session until June 26,

2021. *See* ECF 149-2 at 4, 12. Plaintiff does not provide any evidence that the Legislature passed

similar legislation to the Fund during the session, even though the Legislature "balanced our

budget and made big investments in our communities." *Id*. at 13. The fact that state legislators

were or are communicating about how to use $2.6 billion in new appropriation money does not

support an inference that the State Legislature is going to enact a "same or similar program" to

the expired Fund. This Court declines to adopt Plaintiff's apparent assumption that upon the

State's receipt of different, additional stimulus money, and because the legislature appears to be

expressing generalized interest in myriad issues including racial disparities and COVID-19, that

there exists a reasonable expectation that the State will enact a similar program to the one that it

permitted to expire previously. *See* ECF 149 at 2 (Plaintiff arguing that the ARPA funds, "when

viewed alongside recent statements by Oregon legislators and the Governor, makes it more than

possible that the legislature will revisit the same action"). Such an assumption is based on

speculation and is inconsistent with the presumption that the State Legislature is acting in good faith in allowing legislation to expire. *Glazing Health*, 941 F.3d at 1199. Legislatures are *always* theoretically capable of renewing or duplicating expired legislation, but "we treat the voluntary cessation of challenged conduct by government officials with more solicitude than similar action by private parties." *Glazing Health*, 941 F.3d at 1198 (internal quotation marks, ellipses, and citation omitted).

Accordingly, because the Scott Declaration does not satisfy Rule 56(d) procedurally, and because the Scott Declaration and submitted evidence do not satisfy the rule substantively, the Court denies discovery and proceeds to grant partial summary judgment in favor of Defendants on injunctive and declaratory relief. *Fam. Home & Fin. Ctr., Inc.*, 525 F.3d at 827.

## B. Bifurcating the Case between Liability and Damages and Staying the Liability Phase Are Appropriate in this Case

Having granted State Defendants' Motion for Partial Summary Judgment, ECF 137, this Court now turns to State Defendants' Motion to Bifurcate Case Between Liability and Damages and Stay the Liability Phase, ECF 144. This motion was contingent upon the Court's granting of State Defendants' Motion for Partial Summary Judgment, ECF 137, and concluding that Plaintiff's requests for injunctive and declaratory relief were moot. That disposition leaves only Plaintiff's request for damages. *See* ECF 1 at 8.

Defendants seek to avoid litigation of liability by mooting the case through payment of damages. Defendants argue that "[t]he only impediment to State Defendants' mooting this action right now by paying Plaintiff is the fact that Plaintiff has neither provided a computation of its damages nor committed to a damages theory." ECF 144 at 7. Accordingly, Defendants ask this Court to "bifurcate the remainder of this action such that damages will be determined first while liability discovery and litigation is stayed." *Id.*

**1.  It is possible to moot this case by surrendering complete relief on damages**

Defendants point to numerous judicial opinions supporting the proposition that in a non-class action damages case, when a defendant pays a plaintiff or surrenders to a judgment as to damages only, the case is mooted without a determination of liability. *Id.* at 4–7; *see, e.g., Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 803 (2021) (Kavanaugh, J., concurring); *id.* at 808 (Roberts, C.J., dissenting) (same); *Chen*, 819 F.3d at 1144–45 (holding, based on a series of late-19th century railroad tax cases, that "a lawsuit—or an individual claim—becomes moot when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation" (emphasis in original)).

As the Second Circuit has explained:

> Our decisions appear to recognize that where a defendant surrenders to "complete relief" in satisfaction of a plaintiff's claims, the district court may enter default judgment against the defendant—even without the plaintiff's agreement thereto—and "[t]hen, *after* judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III.

*Geismann*, 909 F.3d at 541–42 (emphasis in original) (citations omitted); *see also McCauley*, 402 F.3d at 342 ("McCauley is not entitled to keep litigating his claim simply because Trans Union has not admitted liability[.]"); *Chathas v. Loc. 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 512 (7th Cir. 2000) ("A winning party cannot appeal merely because the court that gave him his victory did not say things that he would have liked to hear, such as that his opponent is a lawbreaker.").

Cocina Cultura contends that this mooting-by-surrendering-all-relief option is only available in cases seeking a sum certain. ECF 151 at 2–3. The reasoning discussed above does not appear to depend on a sum certain being at issue. Where a defendant seeks to surrender all relief a plaintiff could obtain by judgment in its favor, it does not make sense for a plaintiff to be

permitted to force litigation of liability. And as explained below, Cocina Cultura's new argument that it may use liability discovery to decide whether to add a punitive damages claim is unpersuasive. *See id*. at 2–3, 7.

### 2. Factors including constitutional avoidance, judicial restraint, and efficiency favor bifurcation and staying the liability phase in this case

As soon as damages are determined, Defendants state they "would pay immediately," which would moot the case before the liability stage. ECF 144 at 8; *see also* ECF 145, Coba Decl., at ¶ 3 (stating that if Court "determines that Plaintiff would be owed more than is on deposit with the Court," "I irrevocably agree that I will direct [DAS] to pay [Plaintiff] as quickly as possible"). Defendants argue that bifurcating the case and addressing damages first would "satisfy the central goals of efficiency and judicial economy, the avoidance of complex constitutional issues, and judicial restraint." ECF 144 at 8. This Court agrees.

Under Rule 42(b), this Court may "order a separate trial of separate claims or issues '[f]or convenience, to avoid prejudice, or to expedite and economize.'" *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (quoting Fed. R. Civ. P. 42(b)). "While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." Fed.R.Civ.P. 42(b) advisory committee's note to 1966 amendment. The decision to bifurcate is reviewed for abuse of discretion and is left to the district court's "broad authority." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001). "One favored purpose of bifurcation is to . . . avoid[] a difficult question by first dealing with an easier, dispositive issue." *Id*. In determining whether bifurcation is warranted, courts consider:

> [A] number of factors, including whether bifurcation would promote efficient judicial administration, promote convenience, simplify discovery or conserve resources, reduce the risk of juror confusion, and separability of the issues.

*Fed. Trade Comm'n v. Adept Mgmt. Inc.*, No. 1:16-cv-00720-CL, 2018 WL 893803, at *1 (D. Or. Feb. 13, 2018) (internal quotation marks omitted) (quoting *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 865 (N.D. Cal. 2014)). Addressing the damages stage ahead of the liability stage, or "reverse bifurcation," is less common. *See* Wright & Miller, § 2390 Separate Trials—Separation of Liability From Damages, 9A Fed. Prac. & Proc. Civ. § 2390 (3d ed.) (noting reverse bifurcation is "most often" used to "deal with the backlog and evidentiary complexity" of asbestos cases but is also used in other contexts); *STC UNM v. Intel Corp*., No. 10-CV-1077 RB/WDS, 2011 WL 7562686, at *2 (D.N.M. Dec. 22, 2011) (noting some courts refer to reverse bifurcation as "extraordinary" and "drastic").

Reverse bifurcation and staying the liability phase are appropriate in this case. No matter the outcome on liability, the Defendants say they will pay. Since Plaintiff is not entitled to a declaration, it would serve no purpose to spend the parties' and this Court's resources and time determining liability and then, if there is liability, determining damages. Moreover, the liability stage promises to be hard-fought and time-consuming: the parties dispute what evidence is discoverable, what evidence is admissible, and who may be deposed; there will be expert testimony disputes; and motions practice will be extensive. *See, e.g.,* ECF 114 at 6 (Cocina Cultura brief opposing prior stay of discovery suggesting that a legislator "can always seek a protective order if circumstances warrant"); ECF 144 at 11 n.5; ECF 146, Davidson Decl., at ¶ 5 (stating that during conferral, "Plaintiff's counsel informed me of Plaintiff's intent to take discovery into other State programs that use race as a factor"). Additionally, where the liability stage concerns complex and strongly disputed questions of constitutional law, as well as an arguably novel "emergency" situation to which the relevant doctrine is applied, the interests of

constitutional avoidance and judicial restraint strongly favor bifurcation and a stay. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

This Court is unpersuaded by Cocina Cultura's suggestion that liability and damages are too related to support bifurcation because it may want to add a punitive damages claim based on liability discovery. ECF 151 at 7. Plaintiff did not include a punitive damages claim in its Complaint, waited nearly a year to raise this argument, and points to no facts or legal authority in support of a punitive damages claim against any defendant under any of its claims. *See id*. Nevertheless, Defendants appear to be amenable to limited discovery in a damages phase on whether Defendants "almost certainly knew" that administering the Fund would violate Plaintiff's constitutional rights. *See* ECF 159 at 7–9; ECF 160 at 2–3. Plaintiffs have not explained why the extensive liability discovery they seek is necessary or relevant for evaluating a potential punitive damages claim.

Accordingly, all relevant considerations favor reverse bifurcation in this case: judicial economy and efficiency; the relative complexity of the separate issues (and avoidance of the constitutional issues presented in the liability stage altogether); the distinct quality of the issues to permit separate phases; lack of prejudice to Plaintiff (who will certainly receive its requested relief); lack of risk of jury confusion; and lack of delay by Defendants in seeking bifurcation.

For the same reasons, this Court stays discovery pursuant to Rule 26(c) regarding the liability stage of the case. *See* Fed. R. Civ. P. 26(c) (explaining that a court "may, for good cause, issue an order to protect a party from . . . undue burden or expense" by taking such actions as forbidding discovery on or limiting the scope of discovery to certain matters); *Banks v. Mortimer*, No. 18-cv-07391-HSG, 2021 WL 1599266, at *3 (N.D. Cal. Apr. 23, 2021) (finding such a stay would "conserve the resources of the parties and the Court by deferring such

discovery" where it was not relevant to first bifurcated claim). In this case, liability discovery "has no apparent relevance" to damages discovery. *Banks*, 2021 WL 1599266, at *3.

**C. The Court Denies Plaintiff's MPSJ, ECF 152, With Leave to Refile if Appropriate**

After State Defendants filed the foregoing two motions, Cocina Cultura filed a MPSJ on the issue of liability. ECF 152. Based on the foregoing, and because this Court bifurcates the action and stays the liability phase, this Court denies Plaintiff's MPSJ with leave to refile if appropriate.

**CONCLUSION**

For the foregoing reasons, State Defendants' MPSJ, ECF 137, is GRANTED. Plaintiff's injunctive and declaratory relief claims are moot. State Defendants' Motion to Bifurcate and Stay the Liability Phase, ECF 144, is GRANTED. This Court reverse-bifurcates this case and stays liability discovery pending resolution of the damages stage of the case. Plaintiff's MPSJ, ECF 152, is DENIED with leave to refile if appropriate.

**IT IS SO ORDERED**.

DATED this 27th day of August, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge